**LEXINGTON INSURANCE COMPANY, Plaintiff,**

v.

**ROYAL INSURANCE COMPANY OF AMERICA, Defendant.**

No. 93–30586–RV.

United States District Court, N.D. Florida, Pensacola Division.

Feb. 24, 1995.

---

Mark A. Newell, Barker & Janecky, P.C., Pensacola, FL, for plaintiff Lexington Ins. Co.

Paul B. Butler, Jr., Butler, Burnette & Pappas, Tampa, FL, for defendant Royal Ins. Co. of America.

## ORDER

VINSON, District Judge.

Pending is defendant Royal Insurance Company of America's motion for summary judgment. (doc. 30).

### I. BACKGROUND

Except as noted, the following facts are undisputed in the record. On March 11, 1991, a collision occurred between a van driven by an employee of Sacred Heart Hospital of Pensacola, Florida ("Sacred Heart") and a log truck. The impact of the collision caused the log truck to collide with a vehicle driven by William Stone. During the collision, a number of logs fell from the truck onto Stone's vehicle. As a result of the accident, Stone suffered significant permanent injuries.

Defendant Royal Insurance Company of America ("Royal") had issued to Sacred Heart a policy of liability insurance affording coverage in the amount of $1,000,000.00 per accident, and plaintiff Lexington Insurance Company ("Lexington") had issued Sacred Heart a policy of liability insurance which provided excess coverage of $7,000,000.00, over and above the coverage provided by Royal. Both policies were in effect at the time of the Stone accident.

William Stone filed his complaint in the Circuit Court in and for Escambia County, Florida, against Sacred Heart, its employee, the owner of the log truck, the driver of the truck, and the driver's employee (*Stone v. Sacred Heart*, Case No. 91–2461–CA–01). Royal retained an attorney to represent Sacred Heart in the litigation. Sporadic settlement negotiations and offers occurred during the pendency of the litigation, but the parties

did not settle the case prior to trial. After a trial on the merits, the jury returned a verdict on April 16, 1993, finding that Stone had sustained damages of $4,759,599.00, and that Sacred Heart was liable for Stone's damages. Judgment was subsequently entered in accordance with the jury's verdict.

Lexington and Royal, as the affected insurers, agreed that the verdict was incorrect as a matter of law and should be appealed, and both contributed to the cost of the appeal bond. An appeal on behalf of Sacred Heart was filed on August 27, 1993. The appeal is currently pending in the Florida First District Court of Appeal.

Lexington commenced this action in the Circuit Court in and for Escambia County, Florida, alleging that Royal acted in bad faith in failing to settle the *Stone v. Sacred Heart* case, and that Royal should be liable for the entire judgment which may ultimately be entered. Royal timely removed the case to this court and has now moved for summary judgment.

## II. ANALYSIS

### A. *Summary Judgment Standard.*

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. As the Supreme Court of the United States has instructed, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987).

However, summary judgment is improper "[i]f a reasonable fact finder could draw more than one inference from the facts, and that inference creates a genuine issue of material fact." *Cornelius v. Highland Lake,* 880 F.2d 348, 351 (11th Cir.1989), *cert. denied,* 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Id. See also Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986).

On summary judgment motion, the record and all inferences that can be drawn from it must be viewed in the light most favorable to the non-moving party. *See Souran v. Travelers Ins. Co.,* 982 F.2d 1497, 1502 (11th Cir.1993). Furthermore, the court must consider the entire record in the case, not just those pieces of evidence which have been singled out for attention by the parties. *See Clinkscales v. Chevron USA, Inc.,* 831 F.2d 1565, 1570 (11th Cir.1987).

### B. *Failure to State a Claim for Bad Faith.*

▮ Royal contends that it is entitled to summary judgment on four alternative bases. I will consider each in turn, although three are clearly without merit. Initially, Royal contends that Lexington has failed to state a claim for bad faith failure as a matter of law. Royal relies on *Ranger Ins. Co. v. Travelers Indemnity Co.,* 389 So.2d 272 (Fla. 1st DCA 1980). There, the court held that in a bad faith action, the excess insurance carrier must allege either that it made an offer to contribute (either a specific sum or an indefinite amount) which when combined with the primary carrier's coverage would have produced a settlement at a figure below the award ultimately obtained by the claimant, or that such an offer would have been an "exercise in futility" due to the primary carrier's "unresponsive attitude." *Id.* at 277.

Royal contends that Lexington was never willing to contribute anything towards a settlement, and therefore has failed to state a claim for bad faith. However, this contention is refuted by a letter in the record of

April 13, 1993, from Lexington to Royal in which Lexington demanded that Royal tender its policy limits of $1,000,000.00, after which Lexington would contribute to a settlement offer. [Ex. "A" to Ex. 1 of doc. 31] This alone is enough to create a genuine issue of material fact precluding summary judgment. Moreover, Lexington contends that even if it failed to adequately communicate an offer to Royal, that failure should be excused as an exercise in futility because Royal never offered to pay more than $450,000.00 in settlement of Stone's case, despite the fact that its policy limits were $1,000,000.00, and despite the fact that the attorney retained by Royal evaluated the likely minimum value of the case to be $750,000.00. This likewise creates a genuine issue of material fact. Accordingly, the motion for summary judgment is DENIED with regard to Lexington's failure to state a claim.

## C. Absence of Evidence of Bad Faith.

■ As a second basis for granting summary judgment, Royal contends that no reasonable jury could find that it acted in bad faith. In support of this contention, Royal has filed the affidavits of Eugene J. Conner and Lee Troske. Both have extensive experience in the insurance industry, and Conner is also an attorney. Conner and Troske each state that in his professional judgment, Royal acted in good faith in handling the Stone claim.

Conner and Troske's affidavits are refuted by the affidavit of John B. Deiner. Deiner is the executive vice president, secretary, and general counsel of the Ormond Reinsurance Group. Deiner has thirty-two years of experience in insurance claims and is also an attorney. Deiner states that it is his professional opinion that Royal failed to act in good faith in its evaluation and handling of settlement negotiations in the *Stone v. Sacred Heart* case. The conflict between the testimony of Conner and Troske and that of Deiner creates a genuine issue of material fact as to whether Royal acted in good faith. Accordingly, the motion for summary judgment is DENIED with regard to the absence of evidence of bad faith in the record.

## D. Unclean Hands.

■ As the third basis for its motion for summary judgment, Royal contends that Lexington's claim is barred by the equitable doctrine of "unclean hands." The basis of this contention is the absence of any written entries in the claim log between December 21, 1992, and April 1, 1993. Royal asserts that this demonstrates that Lexington failed to monitor the Stone claim, and that this constitutes unclean hands as a matter of law.

In support of its position, Royal cites *Hocker v. New Hampshire Ins. Co.*, 922 F.2d 1476 (10th Cir.1991) (applying Wyoming law). *Hocker* is inapposite. There, the excess carrier failed to make any investigation of the claim whatsoever. It is undisputed in this case that Lexington investigated the claim. It is also undisputed that Royal had advised Lexington that the settlement value of the case was below the limits of the primary coverage. Based on Lexington's representations that the award was not likely to be high enough to involve Royal, it was certainly reasonable for Royal to monitor the case less intensely than it otherwise might have. Moreover, it appears that the case was monitored during the period in question. Lexington's representative, Sarah Atwood, testified in her deposition that the absence of written entries meant only that no significant development occurred during that period which merited being memorialized in writing, and not that the case was not monitored. At the least, there is a genuine issue of material fact as to whether Lexington failed to adequately monitor the Stone claim. Accordingly, the motion for summary judgment is DENIED with regard to the equitable doctrine of unclean hands.

## E. Accrual of a Bad Faith Failure to Settle Cause of Action.

■ As a final basis for granting summary judgment, Royal asserts that Lexington's claim is not yet ripe. Royal asserts that a bad faith failure to settle cause of action does not accrue under the underlying litigation is completed, and the liability of an insured is conclusively determined. Royal contends that since the *Stone v. Sacred Heart* case which is the basis of the bad faith claim is on

appeal, there has been no final determination of Sacred Heart's liability to Stone, and Lexington's claim is not yet ripe. However, Lexington contends that a final judgment by a trial court is a conclusion of the litigation, and the fact that an appeal is pending is irrelevant.

Both parties cite the same cases, each contending that those cases support its position. In fact, none of the cases cited by either party has dealt with the precise issue presented in this case: whether a bad faith claim can be brought while an appeal is pending in the underlying case which is the basis of the claim. In *Blanchard v. State Farm Mutual Automobile Ins. Co.*, 575 So.2d 1289 (Fla.1991), the Supreme Court of Florida, in answer to a question certified by the Eleventh Circuit Court of Appeals, resolved a then-existing split in the District Courts of Appeal, holding that a cause of action for bad faith failure to settle did not accrue until the "conclusion of the underlying litigation." 575 So.2d at 1291. The rationale for this rule is that it is impossible to determine whether the insurer acted in bad faith in refusing to settle, and certainly it is impossible to determine the insured's damages, until it is established that the insured is liable for the injuries, and the amount of the damages. *Id.* Subsequent to the *Blanchard* decision, the settled law of Florida is that a cause of action for bad faith failure to settle does not arise until there has been a final determination of the insured's liability and the extent of the plaintiff's damages. *See, e.g., Imhof v. Nationwide Mutual Ins. Co.*, 643 So.2d 617 (Fla.1994); *Clough v. Government Employees Ins. Co.*, 636 So.2d 127 (Fla. 5th DCA 1994); *Dixie Ins. Co. v. Gaffney*, 582 So.2d 64 (Fla. 1st DCA 1992).

None of the cases cited above apparently involved a situation in which an appeal was pending in the underlying litigation. However, in a case cited by neither party, the Florida Second District Court of Appeal held on the authority of *Blanchard* that a bad faith claim cannot be brought while the underlying litigation is on appeal. *Michigan*

*Millers Mutual Ins. Co. v. Bourke*, 581 So.2d 1368 (Fla. 2d DCA 1991).

*Michigan Millers* differs only in that it involved a claim of bad faith denial of coverage, rather than bad faith failure to settle.[1] There, after the insurer denied coverage under the policy, the insureds sued asserting both a coverage claim under the policy and a bad faith claim. The trial court abated the litigation on the bad faith claim and subsequently granted summary judgment in favor of the insureds on the coverage claim. The insurer appealed.

While the appeal of the coverage issue was pending, the trial court lifted the abatement of the bad faith claim. The Second District Court of Appeal, citing *Blanchard*, reversed the order lifting the abatement of the bad faith claim. The court held that an insured or its subrogee could not pursue a bad faith claim during the pendency of the appeal of the underlying action.

The holding in *Michigan Millers* is consistent with the decisions Florida courts have reached on the effect of a pending appeal in malicious prosecution actions. A cause of action for malicious prosecution, like a cause of action for bad faith, does not arise until there has been a "bona fide termination" of the underlying proceedings which are the basis of the claim. In a malicious prosecution case, the Florida Third District Court of Appeal held: "If an appeal is taken, the proceedings are not terminated until the final disposition of the appeal and of any further proceedings that it may entail." *C.A. Hansen Corp. v. Wicker, Smith, Blomqvist, Tutan, O'Hara, McCoy, Graham & Lane, P.A.*, 565 So.2d 812, 813 (Fla. 3d DCA 1990) (quoting Restatement (Second) of Torts § 674 Comment j (1977)).

*Michigan Millers* is directly on point and I have no reason to believe that the Supreme Court of Florida would reach a different conclusion. The law of Florida is that a cause of action for bad faith failure to settle a claim does not arise until there has been a final determination of the insured's

---

1. The *Michigan Millers'* court simply referred to both the bad faith failure to settle claim in *Blanchard* and the bad faith denial of coverage claim in *Michigan Millers* as "bad faith claims" and did not distinguish between the two claims.

liability and the claimant's damages, including the resolution of any appeals. Therefore, Royal is correct in maintaining that Lexington's bad faith claim has not yet accrued. However, the proper action to take is not summary judgment, which is a determination on the merits, but an abatement of the litigation during the pendency of the appeal. *See Michigan Millers Mutual Ins. Co. v. Bourke,* 581 So.2d 1368 (Fla. 2d DCA 1991). Accordingly, defendant Royal Insurance Company of America's motion for summary judgement is DENIED. However, further proceedings in this case are ABATED during the pendency of the *Sacred Heart v. Stone* appeal, or until further order of this court.

DONE AND ORDERED.