IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

SANDRA BARTON AND GREGORY
BARTON,

      Appellants,

 v.                                   Case No.  5D15-1587

CAPITOL PREFERRED INSURANCE
COMPANY, INC.,

      Appellee.

_____/

Opinion filed December 9, 2016

Appeal from the Circuit Court
for Marion County,
Lisa D. Herndon, Judge.

James J. Dye, Orlando, and Nicholas A.
Shannin and Pamela R. Masters, of
Shannin Law Firm, P.A., Orlando, for
Appellants.

Brandon S. Vesely and Nicole M. Ziegler,
of Keane, Reese, Vesely & Gerdes, P.A.,
St. Petersburg, for Appellee.

EVANDER, J.

      Sandra and Gregory Barton appeal the final summary judgment entered in favor

of Capitol Preferred Insurance Company, Inc., on the Bartons' first-party bad-faith

complaint.  In granting Capitol's motion for summary judgment, the trial court found that

by accepting Capitol's proposal for settlement on their underlying breach of contract claim for an amount less than the policy limits, the Bartons had failed to obtain a determination of liability or the extent of their damages. We disagree and, accordingly, reverse.

Capitol provided homeowners' insurance to the Bartons from April 28, 2003, through 12:01 a.m., April 28, 2011. The homeowners' policy included sinkhole coverage up to policy limits of $312,000. Capitol did not renew the Bartons' policy after April 28, 2011, and the Bartons then obtained homeowners insurance with Universal Property and Casualty Insurance Company, effective from April 28, 2011 through April 28, 2012. Within two weeks of obtaining insurance with Universal, the Bartons noticed damage to the walls and floor of their home. They filed a claim for sinkhole-related damages with Universal. Universal denied the claim, determining that the damage occurred prior to the effective date of its policy. Thereafter, by letter dated October 7, 2011, the Bartons, through their attorney, submitted a claim and request for sinkhole testing to Capitol, pursuant to section 627.707, Florida Statutes (2011).[1] The Bartons did not provide a date of loss in their claim. Capitol denied the claim by letter dated October 17, 2011. In its letter, Capitol identified the date of loss as "Unknown" and stated that it could not process any claim payments because the policy was not renewed on April 28, 2011. The letter also stated, "However, if you believe you have documentation which confirms that the incident occurred within the policy effective period, please forward it to this office for review."

---

[1] Section 627.707 sets forth an insurer's obligation to investigate sinkhole claims. Among other things, once an insurer receives a sinkhole claim for a covered building, the insurer must inspect the premises for structural damage that may have resulted from sinkhole activity and engage a professional engineer or geologist to conduct testing if the cause of damage cannot be ascertained or is consistent with sinkhole activity. § 627.707(1)-(2), Fla. Stat. (2011).

The Bartons filed a breach of contract action against both Capitol and Universal in August 2012. Subsequently, Universal retained Ground Down Engineering ("GDE") to perform sinkhole testing. GDE issued a report on January 8, 2013, determining that "the cracks and separations within and on the exterior of the Barton residence are likely the result of soil movement associated with sinkhole activity." GDE estimated the cost of repairs would be between $129,220 and $146,220. The Bartons settled their breach of contract action with Universal for an undisclosed amount, but continued to pursue their action against Capitol.

In March 2013, pursuant to section 624.155, Florida Statutes (2013),[2] the Bartons filed a "Civil Remedy Notice of Insurer Violation" with the Florida Department of Insurance.

---

[2] Section 624.155, Florida Statutes (2013), provides, in pertinent part:

**624.155  Civil remedy.—**

(1)  Any person may bring a civil action against an insurer when such person is damaged:

. . . .

(3)(a)  As a condition precedent to bringing an action under this section, the department and the authorized insurer must have been given 60 days' written notice of the violation. If the department returns a notice for lack of specificity, the 60-day time period shall not begin until a proper notice is filed.

(b)  The notice shall be on a form provided by the department and shall state with specificity the following information, and such other information as the department may require:

1. The statutory provision, including the specific language of the statute, which the authorized insurer allegedly violated.

3

2. The facts and circumstances giving rise to the violation.

3. The name of any individual involved in the violation.

4. Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

5. A statement that the notice is given in order to perfect the right to pursue the civil remedy authorized by this section.

. . . .

(d) No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected.

(e) The authorized insurer that is the recipient of a notice filed pursuant to this section shall report to the department on the disposition of the alleged violation.

. . . .

(4) Upon adverse adjudication at trial or upon appeal, the authorized insurer shall be liable for damages, together with court costs and reasonable attorney's fees incurred by the plaintiff.

. . . .

(8) The civil remedy specified in this section does not preempt any other remedy or cause of action provided for pursuant to any other statute or

4

Section 624.155 of the Florida Insurance Code,[3] requires insureds to file a civil remedy notice with the Department of Insurance (with a copy served on the insurer) as a condition precedent to bringing a bad-faith claim against an insurer.  *See* § 624.155(1)(b), Fla. Stat. (2013).  The notice must set forth the specific statutory provision the insurer allegedly violated, the facts giving rise to the violation, the relevant policy language, and a statement that the notice is given to perfect the right to pursue the civil remedy authorized by the statute.  § 624.155(3)(b), Fla. Stat. (2013).  If the insurer pays the damages or corrects the violation within sixty days of the filing of the notice, then the insureds are precluded from filing a bad-faith claim.  § 624.155(3)(a), (d), Fla. Stat. (2013).

In their civil remedy notice, the Bartons alleged that rather than perform a "complete, thorough and statutorily compliant sinkhole/subsidence investigation," Capitol merely summarily denied the sinkhole claim, thereby placing its interests ahead of those of its insureds.  The civil remedy notice further alleged that Capitol wrongly denied a valid claim.

_____

pursuant to the common law of this state. Any person may obtain a judgment under either the common-law remedy of bad faith or this statutory remedy, but shall not be entitled to a judgment under both remedies. This section shall not be construed to create a common-law cause of action. The damages recoverable pursuant to this section shall include those damages which are a reasonably foreseeable result of a specified violation of this section by the authorized insurer and may include an award or judgment in an amount that exceeds the policy limits.

[3] The Florida Insurance Code is found at chapters 624-632, 634-636, 641-642, 648, and 651 of the Florida Statutes (2013).

On April 5, 2013, Capitol responded to the civil remedy notice by denying all allegations. Approximately six months later, Capitol served the Bartons with a proposed settlement, pursuant to section 768.79, Florida Statutes (2013), offering to settle the Bartons' claim for $65,000. Significantly, the proposal did not require the Bartons to execute a release or to expressly waive their right to pursue a bad-faith action against Capitol. The Bartons timely accepted Capitol's proposal for settlement. Shortly thereafter, Capitol paid the Bartons $65,000, and the Bartons dismissed their breach of contract complaint.

After settling the underlying action, the Bartons filed a first-party bad-faith action against Capitol, alleging that in handling the Bartons' sinkhole claim, Capitol violated sections 624.155(1)(b) and 626.9541(1)(i)3,[4] Florida Statutes (2013), by, *inter alia*, failing

---

[4] Section 626.9541(1)(i)3., Florida Statutes (2013), provides:

> **626.9541  Unfair methods of competition and unfair or deceptive acts or practices defined.—**
>
> (1) **Unfair methods of competition and unfair or deceptive acts.—**The following are defined as unfair methods of competition and unfair or deceptive acts or practices:
>
>    . . . .
>
>    (i) *Unfair claim settlement practices.—*
>
>     . . . .
>
>      3. Committing or performing with such frequency as to indicate a general business practice any of the following:
>
>       a. Failing to adopt and implement standards for the proper investigation of claims;

6

b. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

c. Failing to acknowledge and act promptly upon communications with respect to claims;

d. Denying claims without conducting reasonable investigations based upon available information;

e. Failing to affirm or deny full or partial coverage of claims, and, as to partial coverage, the dollar amount or extent of coverage, or failing to provide a written statement that the claim is being investigated, upon the written request of the insured within 30 days after proof-of-loss statements have been completed;

f. Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement;

g. Failing to promptly notify the insured of any additional information necessary for the processing of a claim; or

h. Failing to clearly explain the nature of the requested information and the reasons why such information is necessary.

i. Failing to pay personal injury protection insurance claims within the time periods required by s. 627.736(4)(b). The office may order the insurer to pay restitution to a policyholder, medical provider, or other claimant, including interest at a rate consistent with the amount set forth in s. 55.03(1), for the time period within which an insurer fails to pay claims as required by law. Restitution is in addition to any other penalties allowed by law, including, but not limited to, the suspension of the insurer's certificate of authority.

to properly investigate the Bartons' claim and failing to act in good faith to settle that claim. Capitol filed an answer and affirmative defenses denying liability.[5]

Capitol filed a motion for summary judgment in December 2014. It alleged that it was entitled to judgment as a matter of law on the Bartons' bad-faith claim because the Bartons failed to establish the necessary prerequisites to maintain such a claim against Capitol. Specifically, Capitol alleged that the Bartons failed to prove that: (1) the underlying breach of contract case had been resolved in their favor; and (2) there had been a determination of the "actual extent of [their] loss." In support of summary judgment, Capitol submitted an affidavit from one of its claims supervisors, who averred that as a claims supervisor she oversaw all claims, evaluated liability, and made coverage decisions. According to her affidavit, Capitol never admitted liability for the Bartons' claim and the proposal for settlement was made in an effort to dispose of litigation costs. The claims supervisor further averred that there had not been a determination of liability against Capitol, nor had there been a determination of the extent of the Bartons' alleged damages.

The Bartons filed a response in opposition to Capitol's motion for summary judgment. They alleged that although a release was discussed, the parties ultimately agreed to a settlement without a release. Additionally, the Bartons' posited that Capitol's payment of $65,000 on the policy was a confession of judgment and constituted a determination of liability and damages. In support of their response, the Bartons filed the affidavits of the Bartons and their attorney. The trial court granted Capitol's motion for

---

[5] Capitol also filed a counterclaim alleging that the Bartons had breached the settlement agreement by filing a bad-faith claim.

summary judgment, stating that "a proposal for settlement does not equate to a determination of liability and the extent of damages." The Bartons timely appealed the final summary judgment granted in favor of Capitol.

A cause of action for an insurer's failure to settle its insured's claim in good faith does not accrue until and unless the insured's underlying first-party action for insurance benefits is resolved favorably to the insured. *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991). Furthermore, a bad-faith action is premature until there is a determination of liability and extent of damages owed on the first-party insurance contract. *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1276 (Fla. 2000). However, the Florida Supreme Court has specifically stated that the insured is not obligated to obtain the determination of liability and the full extent of his or her damages through a trial, but may do so by other means—such as a settlement:

> Certainly, the insured is not *obligated* to obtain the determination of liability and the full extent of his or her damages through a trial and may utilize other means of doing so, such as an agreed settlement, arbitration, or stipulation before initiating a bad faith cause of action.

*Fridman v. Safeco Ins. Co. of Ill.*, 185 So. 3d 1214, 1224 (Fla. 2016).

Here, Capitol's payment of $65,000 constituted a favorable resolution for the Bartons. *Cf. Ivey v. Allstate Ins. Co.*, 774 So. 2d 679, 684-85 (Fla. 2000) (holding that Allstate's voluntary payment of additional monies after insured brought action to recover personal injury protection benefits operated as confession of judgment, thereby entitling insured to recover attorney's fees). The settlement further served as a determination of liability and extent of the Bartons' damages. *See Fridman*, 185 So. 3d at 1224 (stating that settlement may serve as determination of liability and full extent of insured's

9

damages); *Brookins v. Goodson*, 640 So. 2d 110, 112 (Fla. 4th DCA 1994), *disapproved on other grounds*, *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 62 (Fla. 1995) (holding that insurer's payment of policy limits pursuant to settlement of underinsured motorist claim established that insured had valid claim for underinsured motorist benefits for purpose of first-party bad-faith action against insurer).

Capitol suggests that because it settled for an amount less than policy limits or the amount initially demanded by the Bartons, that there has been no determination of liability or extent of damages. We reject that argument. Section 624.155 authorizes an insured to bring a first-party bad-faith action where the insured has been damaged by the insurer's failure to comply with certain enumerated statutory provisions. The statute does not condition the right to bring an action on the insured's recovery of the policy limits or an amount equal to or greater than its initial demand in the underlying action.

REVERSED AND REMANDED.


LAWSON, C.J., and SCHUMANN, B.B., Associate Judge, concur.

10